Mason, J.
The complaint, which on the motion to vacate or modify the injunction, must be taken as true, clearly shows that the justice had no jurisdiction in the matter. He has power, under the statute, authorising summary proceedings to recover the possession of land, upon the application of a landlord, to .¡remove a tenant from premises occupied by him in certain speci *664 fied cases; but it is essential to the exercise of this power, that the relation of landlord and tenant should have existed, and that the tenant holds over without permission, either after the expiration of the term, or after default in the payment of rent, or after he had been discharged under an insolvent act. There is only one case in which this power is conferred on him, as to parties, between whom the relation of landlord and tenant has not subsisted, and that is where a person holds over, and continues in the possession of real estate which has been sold and conveyed by virtue of an execution against him. In all other cases, the party proceeded against must be a tenant who wrongfully holds the possession against the landlord. If the party in possession has himself become the owner of the premises, he cannot be turned out under this act, even though the party seeking to do so has previously borne towards him the relation of landlord. Under such circumstances, the justice would have no jurisdiction, and all his proceedings would be coram non judice and void. ¡Now, in the present case, it distinctly appears by the complainant, that although the plaintiff, Caroline Capet, before her intermarriage, had hired the premises from the defendant for a term which expired on the 1st of May last, yet that in the month of February last, she received from him a written agreement for the sale of the premises to her, which she accepted, and with the terms of which she complied, by the payment of the whole purchase-money in the manner and to the person designated by the defendant for that purpose, long before the commencement of the proceedings, to dispossess her, and as early as the middle of April last. Having thus purchased the premises, the relation of tenant was merged in that of owner, and her right of possession for a limited and definite timé was changed into one which was absolute and unlimited. She became the equitable, if not the legal owner of the property, and was entitled to a conveyance thereof from the defendant. It will not be pretended, that if the defendant had fulfilled his contract, by the execution and delivery of the conveyance, he would have had any right to have instituted these proceedings, and under them, as landlord, to tarn the plaintiffs out of possession. Surely then he cannot, by a refusal to comply with his contract, acquire greater rights *665 than he would have had, if he had acted up to its letter and spirit. The pretence, that the plaintiff held over after the expiration of this term, while it would exonerate the justice from any wrong intention, and might justify him in commencing the proceedings, yet would not authorise him in continuing them, after he had notice of the trué state of the case, or in holding cognizance of a controversy in which the real question was the title to the land, and not merely the right of possession, as between landlord and tenant.
Admitting, then, that the counsel for the defendant is right in proposing that the Pith section of the act, which declares that the proceedings on the application of the landlord shall not be stayed or suspended by certiorari, or by any other writ or order of any court or officer, applied to injunctions out of courts of equity, as well as to proceedings at law, (a) yet it can only affect cases in which the justice has jurisdiction, and not cases in which, by the admission of the person assuming to be landlord, the justice has no jurisdiction. A mere allegation on the part of the person instituting the proceedings, that the circumstances exist which the statute requires, cannot authorise the justice to proceed, when it is proved or admitted that the allegation is false. Upon this ground alone the injunction was properly granted, and ought to be continued.
But that portion of the I/Tth section above referred to, has been *666 virtually repealed by the 471st section of the code, which, while it continues in force, the statute relative to these summary proceedings expressly repeal any particular provision contained in it, inconsistent with the code; and this particular provision of the 47th section is, we think, plainly inconsistent with the 219th section of the code, which authorises an injunction to issue when it shall appear by the complaint, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission, a continuance of which, during the litigation, would produce injury to the plaintiff.
How, the plaintiff Caroline Capet, having purchased the premises from the defendant, and paid for them in full, is clearly entitled to a conveyance, if the agreement entered into is not of itself a conveyance, and the plaintiffs are also entitled to be quieted in the possession; and the proceedings before the justice, if carried out to the granting of the dispossessing warrant, would produce a serious injury to them. (a)
The motion to vacate the injunction is therefore denied, with ten dollars costs.
Upon the motion for an attachment against the defendant, I cannot hesitate for a moment. The defendant has, by his own confession, openly and wilfully violated it. He went on and proved his case before the justice, and took out a warrant for the removal of the plaintiff from the premises, after the service of the injunction u¡)on him. Neither the advice of his counsel, that the injunction was illegal, nor the declaration of the justice, that he would go on and try the case, notwithstanding the injunction, affords any justification of the defendant’s conduct. If he choose to rely upon these irresponsible opinions, and set the authority of the court at defiance, he must abide the consequence. The distinction taken by the counsel for the defendant, between an order for an injunction and an injunction under the seal of the court, is a distinction without a difference. The seal under the old practice did not possess any such magic virtue as *667 was ascribed to it by the counsel. Its whole efficacy depended on the fact, that it was a conclusive evidence of the order of the court, for it could not be affixed to any writ, and especially to a writ of injunction, without an order of the court expressly authorizing it. The code has taken away the necessity of using this particular sign or evidence of an order, but it has left the substance—the power in the court or judge to make the order, and the power to enforce it.
The conduct of the defendant’s counsel, upon the service of the injunction, was very different from what should have been pursued. He was an officer of the court. He ought, therefore, to have advised his client to respect its authority, even though in his opinion the court had erred. We live under a government of law, and it is one of the peculiar felicities of our condition, that the moral sense of the community is so strongly on the side of obedience to law, that, in the civil administration of justice, resort to physical force is seldom necessary to carry the judgments of the courts into effect. They are submitted to as a matter of course. It is peculiarly the duty of those who profess the law, to cherish this feeling, and to elevate and strengthen the spirit of obedience to judicial authority. And it is a matter of deep regret, when any of those whose province it is to aid in the administration of justice, encourage resistance to or disregard of the decisions of the court or of its judges. In the present case, the counsel did not himself violate the injunction, nor does it appear that he advised his client to do so, but the expression of his opinion as to the illegality of the order, was certainly calculated to induce the defendant to believe that he might disregard it with impunity. That circumstance, therefore, may be taken into consideration in determining the punishment to be inflicted, but cannot prevent the issuing of the attachment.
The defendant, however, may prevent its being issued, by vacating all the proceedings taken before the justice, on the 28th of Hay and subsequently, and dismissing his application, and paying §10-costs of this motion within three days after service of a copy of this order. Otherwise the attachment must issue.

 In the case of James v. Stuyvesant, before the chancellor, in December, 1839, an injunction had been issued, restraining the defendant’s proceedings taken under this act, to dispossess the complainant from several leasehold premises, on the ground of the non-payment of rent. The bill charged fraud, and various other equitable grounds for relief. A motion was made to dissolve the injunction, under the 35th rule of the court of chancery, for the reason that the bill was not served within six days after the defendant appeared. The author, as counsel for the complainant, sought to excuse this omission, and to have the complainant relieved on terms, retaining his injunction. The defendant then insisted that the injunction ought to be dissolved on the matters of the bill, relying on the 47th section of the act, and that therefore the complainant ought not to be permitted to retain it. The question on this section was argued at large, and the chancellor, in conclusion, allowed the complainant to retain the injunction, saying, that in his opinion the 47th section did not prevent the court of chancery ■from relieving the tenant in a case of fraud.—See contra, Moffat v. Smith, (1 Barb. S. C. R. 65.)

 S. P.—Per Edmonds, J., in Cure v. Crawford, 5 Howard’s Pr. R. 293, in the supreme court, first district, July, 1850.